IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-02735-MSK-KLM

CHARLES G. MEDICINE BLANKET,

       Applicant,

v.

HOYT BRILL, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents,
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L.  MIX**

      This matter is before the Court on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Docket No. 3; Filed December 16, 2008] filed *pro se* by Charles G. Medicine Blanket ("Applicant").  Respondents filed an Answer objecting to the Application on June 10, 2009. [Docket No. 19].  Applicant filed a reply on July 20, 2009. [Docket No. 22] (hereinafter "Traverse").

      Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.,  the Application has been referred to this Court for recommendation.  The matter has been fully briefed and is ripe for resolution. The Court has considered the relevant Application, pleadings, the state court record, the applicable case law and is sufficiently advised in the premises.  For the reasons set forth below, the Court recommends that the Application be **DENIED**.

## I.  Background

      Applicant challenges his state court convictions for sexual assault on a child as part

of a pattern of abuse, two counts of sexual assault on a child by one in a position of trust, and two counts of sexual assault in the second degree. *Application* [#3] at 2; *People v. Medicine Blanket*, No. 06CA978, slip op. at 3 (Colo. Ct. App. July 24, 2008) (*Medicine Blanket II*). In May 1998, Applicant was convicted by a jury in the Arapahoe County District Court, Colorado and sentenced to fifty-five years in prison. *Application* [#3] at 1, 2. Applicant is currently in custody at the Kit Carson Correctional Facility.

The evidence giving rise to Applicant's conviction is the following. During the summer of 1992, Applicant began living with his girlfriend and her young daughter in Colorado. *Application* [#3] at 13; *People v. Medicine Blanket*, No. 98CA2307, slip op. at 3, (Colo. Ct. App. Sept. 21, 2000) (unpublished decision) (*Medicine Blanket I*). Subsequently, they moved to the Rosebud Indian Reservation in South Dakota. *Application* [#3] at 14; *Medicine Blanket II*, No. 06CA978, slip op. at 7. "Over the course of three years, [Applicant] sexually assaulted his girlfriend's daughter, the victim, twice a day, every other day." *Medicine Blanket I*, No. 98CA2307, slip op. at 3. In 1995, the girlfriend's daughter moved in with a neighbor. *Id.* Within twenty-four hours of moving in, the victim reported Applicant's repeated sexual assaults from the previous three years to the Rosebud Indian Reservation Tribal Police ("Tribal Police"). *Id.*

Applicant was then arrested by the Tribal Police in September 1997 pursuant to a federal warrant. *Medicine Blanket v. Watkins*, 44 Fed. Appx. 350, 350 (10th Cir. Aug. 7, 2002) (unpublished decision). After his arrest, Applicant was turned over to federal marshals who placed him in Pennington County Jail in Rapid City, South Dakota. *Id.*; *Application* [#3] at 14. Applicant then faced an extradition hearing, after which he was transported to Colorado where he was convicted. *Medicine Blanket*, 44 Fed. Appx. at 350.

## II.  Procedural History

Applicant directly appealed his conviction.  On direct appeal, with the assistance of counsel, Applicant asserted several claims relating to alleged errors by the trial court and the trial court's alleged abuse of discretion.  *Medicine Blanket I*, No. 98CA2307, slip op. at 4, 6, 9, 12, 14-15, 17;  *Opening Brief* (*Medicine Blanket I*) [#11-3] at 6.  First, Applicant argued "that the trial court abused its discretion by denying his motion for a mistrial" for the delays that took place during the jury venire.  *Medicine Blanket I*, No. 98CA2307, slip op. at 4.  Second, Applicant argued that by not acting *sua sponte* "to quash the jury venire because of the delays in the jury selection process," the trial court abused its discretion. *Id.*  Third, Applicant argued "the trial court abused its discretion in refusing to excuse a juror who inadvertently failed to disclose his prior relationship with a prosecution witness."  *Id.* at 6.  Fourth, Applicant argued "that the trial court abused its discretion by not granting a mistrial" because a newspaper article about the case was found in the jury room.  *Id.* at 9. Fifth, Applicant "contend[ed] that the trial court erred by failing to strike the testimony of the neighbor or reconsider its pretrial ruling that she could testify concerning the child's outcry." *Id.* at 12.  Sixth, Applicant argued "that the trial court erred by failing to require the prosecution" to elect specific acts to support the criminal charge.  *Id.* at 14-15.  Finally, Applicant argued that "his constitutional right to a fair trial was violated because of cumulative error."  *Id.* at 17.  On September 21, 2000, the Colorado Court of Appeals ("CCA") affirmed the judgment.  *Id.*  Applicant then unsuccessfully petitioned for a Writ of Certiorari to the Colorado Supreme Court.  *People v. Medicine Blanket*, No. 01SC37 (Colo. Apr. 9, 2002) (unpublished decision).

Applicant also pursued postconviction relief pursuant to Colo. R. Crim. P. 35(c),

arguing that his trial and appellate counsel were ineffective. *Pre-Answer Response* [#11] at 4. His postconviction relief motion was "supplemented several times by [Applicant's] appointed counsel." *Opening Brief* (*Medicine Blanket II*) [#11-7] at 5. Applicant's postconviction relief motion was partially successful, and Applicant was granted relief based on a claim of double jeopardy. *Medicine Blanket II*, No. 06CA978, slip op. at 4 (reducing Applicant's sentence from fifty-five to forty-one years because of double jeopardy claim). Applicant appealed the unsuccessful claims for postconviction relief. *Id.*; *Opening Brief* (*Medicine Blanket II*) [#11-7] at 7, 8. Applicant was also represented by counsel when he took his appeal. *See Opening Brief* (*Medicine Blanket II*) [#11-7] at 5. On appeal, the CCA rejected his remaining claims for ineffective assistance of counsel. *Medicine Blanket II*, No. 06CA978, slip op. at 4, 6, 8-12.

Specifically, in his second state level appeal prior to the current Application, Applicant's counsel alleged "that trial counsel's failure to challenge the trial court's jurisdiction over" Applicant constituted ineffective assistance of counsel. *Medicine Blanket II*, No. 06CA978, slip op. at 6; *Opening Brief* (*Medicine Blanket II*) [#11-7] at 8. Second, Applicant's counsel argued that the trial court erred in denying his postconviction relief motion on the grounds that "trial counsel was ineffective for failing to convey a plea offer." *Medicine Blanket II*, No. 06CA978, slip op. at 10; *Opening Brief* (*Medicine Blanket II*) [#11-7] at 29. Finally, Applicant's counsel contended "that trial counsel was ineffective for failing to seek disclosure of the prosecutor's handwritten notes" and that postconviction counsel (for the first appeal) was ineffective for "failing to challenge trial counsel's ineffectiveness." *Medicine Blanket II*, No. 06CA978, slip op. at 12; *Opening Brief* (*Medicine Blanket II*) [#11-7] at 23. As noted above, the CCA refused to grant relief on any of the claims. *Medicine*

4

*Blanket II*, No. 06CA978, slip op. at 4, 6, 8-12. The Colorado Supreme Court denied Applicant's petition for Writ of Certiorari on November 24, 2008. *Medicine Blanket v. People*, No. 2008SC702 (Colo. Nov. 24, 2008) (unpublished decision). Applicant has never challenged the effectiveness of his postconviction relief counsel in state court or federal court.

On December 16, 2008, Applicant filed the current action. As noted above, Applicant does not raise any claim with respect to the assistance he received from counsel throughout the postconviction relief process. *See generally Application* [#3]. Although not entirely clear, I find that the Application raises four claims for relief, all of which relate to due process.[1] *See Application* [#3] at 12, 13; *Order* [#14] at 3; *Traverse* [#22] at 1, 2; *see also Castro v. U.S.*, 540 U.S. 375, 381-82 (2003) (noting that it is appropriate for federal courts to construe a *pro se* party's claims in a way that "create[s] a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").

> Claim I      The Tribal Police's and federal officials' failure to notify the Rosebud Sioux Tribal Court of Applicant's arrest and extradition from the Rosebud Sioux Reservation deprived Applicant of due process in violation of the Fourteenth Amendment. *Order* [#14] at 3; *Application* [#3] at 15.
>
> Claim II     The Tribal Court's failure to provide an extradition hearing on the Rosebud Sioux Reservation deprived Applicant of due process in

_____

[1] Prior to the case being referred to this Court, the Application was subjected to preliminary review to determine whether Applicant's claims were timely and exhausted. Senior District Judge Zita L. Weinshienk determined that four of Applicant's five due process claims were timely and exhausted. *Order* [#14] at 3, 6. The fifth claim was dismissed. *Id.* at 6, 8.

violation of the Fourteenth Amendment. *Order* [#14] at 3; *Application* [#3] at 15.

Claim III     The State of South Dakota courts lacked subject matter jurisdiction to hold an extradition hearing in violation of the Fourteenth Amendment. *Order* [#14] at 3; *Application* [#3] at 15.

Claim IV     The State of Colorado's failure to obtain an arrest warrant after the federal warrant against Applicant was dismissed deprived Applicant of due process in violation of the Fourteenth Amendment. *Order* [#14] at 3; *Application* [#3] at 15.

Despite the fact that the claims were subjected to preliminary review on the issue of exhaustion, Respondents contend that Claims I-IV should nevertheless be dismissed due to Applicant's failure to exhaust them. *Answer* [#19] at 5. Because exhaustion is a jurisdictional issue, prior to resolution of Applicant's claims on the merits, I examine whether Claims I-IV are properly before the Court. There does not appear to be any issue regarding the timeliness of Applicant's Application.

### III. Analysis

#### A.     Applicant's Status

Applicant is proceeding *pro se*. *Application* [#3] at 12. Therefore, this Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the nonmoving party's advocate and must nevertheless

6

deny an application that is based on vague, or conclusory, or unsupported allegations. *Hall*, 935 F.2d at 1110.

## B. Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

The first and second standards of review involve claims of legal error. Both standards require that clearly established law warrants an analysis on the merits. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). A state court decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application of federal law when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

The third standard of review involves claims of factual error. While this standard requires a substantial showing by Applicant, "[d]eference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). However, pursuant to this Court's habeas review of state court decisions involving factual conclusions, a presumption of correctness exists regarding state trial and appellate court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

### C.    Exhaustion

Respondents argue that the Applicant has failed to exhaust Claims I-IV. *Answer* [#19] at 5. More specifically, Respondents argue that Applicant's claims, all of which relate to due process, were never raised with or addressed by the CCA and are now procedurally barred. *Id.*

"The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986) (citing *Rose v. Lundy*, 455 U.S. 509, 515 (1982)). The state and federal courts have concurrent power to "guard and protect rights secured by the Constitution." *Rose*, 455 U.S. at 515 (1982) (citation omitted). As such, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity [for] the state courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950), *overruled on other grounds by Fay v. Noia*, 372 U.S. 391 (1963). Accordingly, "a state prisoner may initiate a federal habeas petition '[o]nly if the state courts have had the first opportunity to hear the

claim sought to be vindicated.'" *Vasquez*, 474 U.S. at 257 (emphasis added) (quoting *Picard v. Conner*, 404 U.S. 270, 276 (1971)). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

As noted above, the issue of whether Applicant exhausted the four due process claims presently before this Court has been previously addressed by the Court in preliminary review. *Order* [#14] at 3. Accordingly, this adjudication operates as the law of the case unless certain exceptions apply. Specifically, the Court is "authorized to depart from the law of the case doctrine . . . when the decision was clearly erroneous and would work a manifest injustice." *Gordon v. Arellano*, 08-cv-02538-PAB, 2010 WL 1790410, at *5 (D. Colo. May 3, 2010) (unpublished decision) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009)). "A finding of fact induced on a mistaken view of the law, like one without evidentiary support, is clearly erroneous." *Health Sys. Agency of Okla., Inc. v. Norman*, 589 F.2d 486, 490 n.8 (10th Cir. 1978) (citations omitted). Additionally, manifest injustice is present where there is an error "that is direct, obvious, and observable." *Black's Law Dictionary* 563 (7th ed. 1999); *see also Darr*, 339 U.S. at 204 (recognizing the injustice created by allowing federal review of claims not first presented to state courts). While I am mindful of the thorough review previously conducted, I nevertheless address Respondents' repeated contention that Applicant has failed to exhaust and, in doing so, consider whether the determination that Applicant exhausted his remaining claims should operate as the law of this case.

In order to satisfy the exhaustion requirement, the claim advanced by the federal habeas petitioner must have been submitted to the state courts as one arising under the

federal constitution. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). The decision of the last state court to which the petitioner submitted his claims must fairly appear to rest on issues of federal law or be "interwoven" with federal law. *Id.* (citations omitted). In *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995), the Supreme Court reinforced the duty to exhaust in habeas cases and clarified that an applicant must alert the state court to the precise federal constitutional nature of his claims in order to properly exhaust his claims. The dissent in *Duncan* recognized that post-*Duncan* habeas petitions needed to meet "an exacting pleading requirement." *Id.* at 367 (Stevens, J., dissenting). That is, the "mere similarity of claims is insufficient to exhaust," and "[i]f a habeas petitioner wishes to claim that [a ruling] at a state court denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id.* at 366 (citations omitted).[2]

Importantly, in line with the holding in *Duncan*, at least one court in this district has noted that "[i]t is not sufficient that the claim asserted in a federal habeas application is somewhat similar to one presented to the state courts. Exhaustion requires that a habeas corpus petitioner 'present the state courts with the same claim he urges upon the federal courts.'" *Tam Huynh v. Archuleta*, No. 06-cv-02118-CMA-CBS, 2009 WL 798846, at *4 (D. Colo. Mar. 24, 2009) (unpublished decision) (citation omitted); *see also Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) (noting that pursuing an ineffective assistance of counsel claim in state court, with the assistance of counsel, did not exhaust a due process

---

[2] Although the Supreme Court has recently recognized that equitable considerations should prevent rigid enforcement of habeas rules, this holding relates to the timeliness of an applicant's habeas claims particularly where the untimeliness was caused by neglect of counsel. *See Holland v. Florida*, 560 U.S. ___, 2010 WL 2346549 (June 14, 2010).

claim in federal court for purposes of seeking habeas relief).

The basis for imposing a strict exhaustion rule derives from the principles of "comity" and the desire to "reduce [the] friction between the state and federal court systems by avoiding the 'unseem[liness]'" of having a federal district court overturn a state court conviction on grounds not first presented to the state court. *O'Sullivan*, 526 U.S. at 845. Furthermore, the Tenth Circuit has recognized that comity requires a federal habeas court to ensure that the "'essential substance' of [an applicant's] claim [was presented] to the state court in his state post-conviction application" prior to its resolution in federal court. *Hawkins v. Mullin*, 291 F.3d 658, 664 (10th Cir. 2002) (quoting *Engberg v. Wyoming*, 265 F.3d 1109, 1116 (10th Cir. 2001)). The "essential substance" requirement is an extension of the *Duncan* specificity requirement and ensures that "a state appellate court has . . . the opportunity to rule on the *same claim* presented in federal court." *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992) (emphasis added) (noting that burden is on applicant "to raise all federal constitutional claims in state trial court and if that court rules against petitioner, he must present the same claim on appeal . . . to satisf[y] the exhaustion of state remedies doctrine").

Applicant's first claim alleges a "failure to provide due process" during Applicant's extradition from the Rosebud Sioux Tribal Reservation. *Order* [#14] at 3; *Application* [#3] at 15.[3] Respondents contend that this claim was not exhausted because Applicant did not "assert independent federal due process claims." *Answer* [#19] at 10. In contrast,

---

[3] Applicant's direct appeal did not raise any challenges similar to the ones at issue here. Furthermore, it did not raise any issues that, even with a strained reading of the CCA's findings, suggest a due process violation on similar facts. *See generally Medicine Blanket I*, No. 98CA2307. Accordingly, my analysis is limited to whether Applicant raised any of his habeas claims in his postconviction relief proceedings.

Applicant asserts that this claim was exhausted. *Application* [#3] at 5; *Traverse* [#22] at 2, 3. In support, Applicant lists the claims asserted by his postconviction relief counsel, after at least one of which he has written "due process" in parentheses. *Application* [#3] at 4. However, Applicant's description of his postconviction relief claims is misleading. A review of the state court record indicates that Applicant did not raise any due process claims. Rather, his postconviction relief claims were limited to whether his trial counsel and his counsel on direct appeal were ineffective. *Opening Brief* (*Medicine Blanket II*) [#11-7] at 7.

A review of the CCA's interpretation and ruling on Applicant's most analogous postconviction relief claim reveals that the CCA limited its analysis to the constitutional dimensions of the Sixth Amendment. *Medicine Blanket II*, No. 06CA978, slip op. at 6. Specifically, the CCA ruled that "trial counsel's failure to challenge the trial court's jurisdiction over [Applicant] did not constitute ineffective assistance of counsel." *Id.* Furthermore, applying the law regarding federal jurisdiction, the CCA found that "such a [jurisdictional] challenge [involving Applicant's extradition] was *unlikely* to succeed." *Id.* at 8 (emphasis added). The CCA did not address, because Applicant's counsel did not raise, any issue concerning whether Applicant's extradition from the Rosebud Sioux Reservation satisfied the requirements of due process. *Id.*

Applicant's appeal to the CCA on his postconviction relief motion also challenged whether "[t]he District Court Erred in Holding that Trial Defense Counsel was not Ineffective for Failing to Raise the Issue of the District Court's Jurisdiction over the [Applicant]." *Opening Brief (Medicine Blanket II)* [#11-7] at 8. In support of that proposition, Applicant's counsel argued that "[t]he Federal Marshal had no Authority to Remove the [Applicant] from

the Reservation and turn him over to State Officials for Extradition to Colorado." *Id.* at 12.

The CCA's holding on this issue was limited to finding that the "trial counsel's decision not to challenge the court's jurisdiction over [Applicant] was not below an objective standard of professional conduct." *Medicine Blanket II*, No. 06CA978, slip op. at 8. Neither the CCA's ruling, nor Applicant's appellate brief, mentions a due process challenge to Applicant's extradition from the Rosebud Sioux Tribal Reservation or any due process requirements which were not provided.

As noted above, the "mere similarity of claims is insufficient to exhaust," and "[i]f a habeas petitioner wishes to claim that [a ruling] at a state court denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 366; *see O'Sullivan*, 526 U.S. at 842 ("In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."); *see also McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (noting that "the exhaustion doctrine requires a habeas Applicant to do more than scatter some makeshift needles in the haystack of the state court record" (citations omitted)). Furthermore, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, as noted by the Supreme Court in *Duncan*, the federal claim at issue in state court must be the same at issue in federal court. *Duncan*, 513 U.S. at 366; *see also Anderson*, 459 U.S. at 6 (noting that applicant's state court claim must provide court with "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim" to be deemed exhausted for purposes of habeas review).

As noted earlier, the Tenth Circuit has applied the exacting requirements set forth in *Duncan* and demonstrated an unwillingness to relax the specificity required to exhaust a claim presented in a habeas petition, regardless of an Applicant's status.  For example, the Tenth Circuit refused to allow an applicant, who filed both his postconviction relief proceedings and his habeas application *pro se*, to "reframe the issue" of ineffective assistance of counsel asserted in state court as a violation of his right to confrontation asserted for the first time in federal court.  *Bowman v. Neal*, 172 Fed. Appx. 819, 825, 830 n.6 (10th Cir. Mar. 27, 2006) (unpublished decision).  The court noted that "[c]learly, [applicant] is limited in this federal habeas proceeding by the arguments he asserted in state court."  *Id.*; *see also Berg v. Foster*, 244 Fed. Appx. 239, 244 (10th Cir.  2007) (noting that "'ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or brief' filed in that court to be made aware of the federal claim," at issue (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)).

The Tenth Circuit has also demonstrated an unwillingness, including with *pro se* litigants, to expand its consideration of federal habeas claims based on their mere similarity to claims rased in state court, even when the state court claims involved the same constitutional amendment.  For example, the Tenth Circuit refused to consider an ineffective assistance of counsel claim which differed factually from a related ineffective assistance of counsel claim asserted in state court, noting that "because this suggestion was not made to support [applicant's] ineffectiveness claims in [state court], the argument based on this suggestion is unexhausted."  *Barkell v. Crouse*, 468 F.3d 684, 691 (10th Cir. 2006).  The Tenth Circuit's reluctance to review the unexhausted claim, even though a similar ineffective assistance claim was raised by the *pro se* litigant at the state appellate

14

level, demonstrates adherence to the heightened exhaustion standards enunciated in *Duncan*. *Cf. Holloman v. Gonzales*, 249 Fed. Appx. 57, 62 (10th Cir. Sept. 18, 2007) (unpublished decision) (noting that a due process claim is exhausted where the applicant "specifically referred to his claim below [in state court] as a violation of his due process right to a fair trial").[4]

The Ninth Circuit has addressed whether a federal due process claim is exhausted by a state court ineffective assistance of counsel claim and found that the applicant, who was also represented by counsel during his state postconviction relief appeal, "did not fairly present [his due process] claim to the state courts when he merely discussed it as one of several issues which were handled ineffectively by his trial and appellate counsel." *Rose*, 395 F.3d at 1112. Furthermore, the court found that the claims, "[w]hile admittedly related, [were] distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Id.*; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (holding that applicant's Sixth Amendment claim, raised by counsel in state court, did not exhaust his Fourth Amendment habeas claim because the two are "distinct, both in nature and in the requisite elements of proof."). Ultimately, the Ninth Circuit found that the applicant failed to exhaust his due process claim because the state court "did not directly hold that [applicant's due process] rights were not violated." *Rose*, 395 F.3d at 1112. The Ninth Circuit refused to review the applicant's due process

---

[4] Moreover, I note that this is at least Applicant's third habeas application. The first was denied by a court in this district in 2001 for failure to exhaust. *Medicine Blanket v. Watkins*, No. 00-cv-02487 (D. Colo. Jan. 18, 2001) [Docket No. 6]. The second was denied by the Tenth Circuit in 2002 for failure to exhaust. *Medicine Blanket*, 44 Fed. Appx. at 351. Applicant has been on clear notice since at least 2001 about the necessity to exhaust and the specificity he must employ to do so.

claim because "a fair reading of [applicant's] postconviction [appeal] is that he deliberately chose, with the assistance of counsel, not to raise [his due process] claim before the state courts." *Id.* at 1111.

In the instant case, and although he had the assistance of counsel, Applicant did not raise any due process claims in state court. *See Opening Brief* (*Medicine Blanket II*) [#11-7]. Contrary to his assertions, Applicant did not specifically refer to his claims below as due process claims. Rather, through counsel, Applicant alleged only that his Sixth Amendment rights were violated. *Opening Brief* (*Medicine Blanket II*) [#11-7] at 6, 7. Accordingly, considering the record, I find that the Application raises for the first time a challenge related to Applicant's due process rights in relation to his extradition. This recognition is important because the standard for a Sixth Amendment ineffective counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and requires that an applicant show that (1) counsel's performance was outside the wide range of professionally competent assistance; and (2) he was prejudiced by counsel's errors. *See also Opening Brief* (*Medicine Blanket II*) [#11-7] at 10, 11. By contrast, a due process claim brought either pursuant to the Fifth or Fourteenth Amendment is governed by a completely different legal standard. *See Rose*, 395 F.3d at 1112; *see also Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty . . . interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." (citations omitted)).

Given the characterization of Applicant's claims, the CCA did not have the

opportunity to rule on whether Applicant's due process rights were violated by his extradition from the Rosebud Sioux Reservation; rather, the CCA ruled that Applicant's trial counsel was not ineffective. Furthermore, the CCA's Sixth Amendment ruling does not definitively hold that Applicant's extradition was proper, and notes only that a jurisdictional challenge would be "unlikely to succeed." *See Medicine Blanket II*, No. 06CA978, slip op. at 8. While the CCA found that the "treaty with [Applicant's] tribe" did not "specifically limit jurisdiction within the United States," it never addressed whether Applicant's extradition satisfied Fourteenth Amendment due process requirements. *See id.* at 6. The Court recognizes that although Applicant's state and habeas claims need not cite "book and verse on the federal constitution," his postconviction relief claims are nevertheless legally separate from his habeas due process claim because the CCA reviewed a different legal issue. *Picard*, 404 U.S. at 278 (citations omitted); *see also Baldwin*, 541 U.S. at 32 (holding that exhaustion satisfied where applicant in state court "cit[es] in conjunction with the claim the federal source of law on which he relies"); *Anderson*, 459 U.S. at 6 (finding exhaustion only where state court given opportunity to apply appropriate legal principles bearing upon specific constitutional amendment). Therefore, Applicant's postconviction relief appeal did not provide an opportunity for the CCA to rule on the "substance of [his] federal habeas corpus claim." *Picard*, 404 U.S. at 278. Accordingly, Applicant's first claim is clearly not exhausted, and it would be manifestly unjust to review a claim never presented to the CCA or any other state court.

Applicant's second claim alleges that the lack of an "extradition hearing held on the reservation" denied him due process. *Order* [#14] at 3; *Application* [#3] at 20. Once again Applicant's counsel did not raise, and the CCA did not address, whether the lack of an

extradition hearing violated Applicant's due process rights. Based upon Applicant's ineffective assistance of counsel claim, the CCA held that "because the record supports the trial court's findings and conclusion that trial counsel's performance was not deficient, we need not address whether trial counsel's failure to challenge jurisdiction prejudiced [Applicant]." *Medicine Blanket II*, No. 06CA978. slip op. at 9. The CCA again analyzed any issues concerning Applicant's extradition pursuant to the *Strickland* analysis. The CCA only mentioned the lack of an extradition hearing in conjunction with its holding that "trial counsel's decision not to challenge the court's jurisdiction over defendant was not below an objective standard of professional conduct." *Id.* at 8. Additionally, the CCA noted that "although [Applicant] did not receive an extradition hearing on the reservation, he was arrested by tribal police, and taken into federal custody with the cooperation of tribal authorities. [Applicant] also waived his subsequent extradition from South Dakota to Colorado, which *presumably* render[ed] any prior defect in extradition moot." *Id.* (emphasis added). This "presumption" does not constitute a legal finding. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 17 (2003) (noting that "[d]icta of course have no precedential value"); *see also Metro. Prop. & Cas. Ins. Co. v. Hertz Corp.*, 981 P.2d 1091, 1094 (Colo. 1999) (noting that a decision must be "central to the holding of the case" or it has "no precedential value"). As was the case before the CCA, a claim that counsel rendered ineffective assistance can be adjudicated without considering whether Applicant's due process rights were violated. *See Rose*, 395 F.3d at 1112 (citing *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004) (noting that "[b]y addressing the prejudice of an ineffectiveness claim a court does not bind itself into ruling on the claim's underlying merits")).

A review of Applicant's postconviction appellate brief provides no further proof of an

18

attempt to exhaust any due process issue involving the lack of an extradition hearing. In his brief, counsel argued that although Applicant "consented to the transfer of custody from South Dakota to Colorado," Applicant's trial counsel was ineffective for not ensuring that he was lawfully removed from his Reservation. *Opening Brief* (*Medicine Blanket II*) [#11-7] at 22. Counsel also argued that Applicant's "unlawful arrest by the Federal Marshal deprived the state court of jurisdiction, and it was ineffective assistance of counsel for Trial Defense Counsel to fail to raise this issue." *Id.* at 23. These arguments do not allege that Applicant had a liberty interest in avoiding extradition or that the failure to hold an extradition hearing constituted a violation of due process, as Applicant now claims. *See Order* [#14] at 3; *Application* [#3] at 20.

As noted above, the "mere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366. Further, an ineffective assistance of counsel claim is different from a due process claim. *Lordi*, 384 F.3d at 194; *see also Vassar v. Raines*, 274 F.2d 369, 371 (10th Cir. 1959) (recognizing that for an applicant with counsel at highest state court appeal, exhaustion is found when counsel "raise[s] [the] precise question" with the state courts first). Therefore, Applicant's second claim is clearly not exhausted, and it would be manifestly unjust to review a claim never presented to the CCA or any other state court.

Applicant's third claim alleges that his due process rights were violated because the State of South Dakota "lack[ed] subject matter jurisdiction . . . to hold an extradition hearing." *Order* [#14] at 3*; Application* [#3] at 22. This due process claim was not exhausted because, as discussed *supra*, the CCA only ruled on whether counsel's failure to challenge the lack of an extradition hearing constituted ineffective assistance. *See Medicine Blanket II*, No. 06CA978, slip op. at 8 (noting only that Applicant "also waived his

subsequent extradition from South Dakota to Colorado, which *presumably* renders any prior

defect in extradition moot" (emphasis added)).  Furthermore, to the extent that Applicant's

counsel raised an ineffective assistance of counsel issue, she did so in relation to whether

trial counsel should have objected to the jurisdiction of <u>Colorado</u> courts.  In contrast, in his

habeas Application, Applicant now claims that <u>South Dakota</u> courts lacked jurisdiction.

Accordingly, to the extent that the CCA addressed this issue in relation to an ineffective

assistance of counsel claim, it did so with respect to  Colorado's jurisdiction, not South

Dakota's jurisdiction. *Compare Medicine Blanket II*, No. 06CA978, slip op. at 8 (noting that

a challenge against <u>Colorado's</u> jurisdiction was likely to fail); *Opening Brief* (*Medicine*

*Blanket II*) [#11-7] at 21 (asserting that "[t]he [Applicant's] Subsequent Waiver of Extradition

from South Dakota to Colorado did not reinstate the Colorado Criminal Court's

Jurisdiction"), *with Order* [#14] at 3; *Application* [#3] at 22.

As it stands, no court has addressed (either tangentially or actually) whether  South

Dakota had jurisdiction over Applicant.  While the claims involve a similar factual basis,

each deals with extradition from different states.  Therefore, Applicant's third claim is clearly

not exhausted, and it would be manifestly unjust to review a claim never presented to the

CCA or any other state court.

Applicant's fourth claim alleges that the "failure by the State of Colorado to obtain

an arrest warrant after the federal warrant against him was dismissed" violated his right to

due process.  *Order* [#14] at 3; *Application* [#3] at 24.  Applicant's counsel argued in his

postconviction appellate brief that "it [was] clear that the [Applicant] *was not arrested*

*pursuant to the federal warrant.*"  *Opening Brief* (*Medicine Blanket II*) [#11-7] at 15.

However, counsel did not argue that Colorado's failure to obtain a warrant constituted a

violation of his constitutional right to due process. Rather, counsel discussed the alleged lack of an arrest warrant in relation to Applicant's claim that "the Trial Defense Counsel was . . . Ineffective for Failing to Raise" this issue. *Id.* at 8. Given the characterization of this claim, the CCA did not resolve it in relation to due process principles. *See generally Medicine Blanket II*, No. 06CA978, slip op. at 1.

While Applicant's postconviction relief claim is based on a similar set of facts to his habeas due process claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *See Anderson*, 459 U.S. at 6 (citations omitted); *see also Picard*, 404 U.S. at 275. Additionally, "[t]he exhaustion requirement is not satisfied . . . where the [applicant] presents new legal theories . . . in his federal habeas" application. *Neville v. Dretke*, 423 F.3d 474, 478 (5th Cir. 2005) (holding that where death row applicant "neither explicitly presented his claim in state court nor alerted the state court to the constitutional nature of his claims, the [state] court did not have a fair opportunity to review the substance of [his] particular argument . . . and his claim was not exhausted in state court"). Because neither Applicant nor his counsel raised a due process issue in relation to his arrest, I find that Applicant clearly failed to exhaust his fourth claim, and it would be manifestly unjust to review a claim never presented to the CCA or any other state court.

Although mindful of the value of preliminary review, my independent review of the state court record in comparison to Applicant's habeas claims prompts me to reach a different result. Because I find that Applicant clearly failed to exhaust his claims, I recommend that the District Court find the earlier ruling rejecting the exhaustion defense to be clearly erroneous. Furthermore, I recommend that the District Court find that the

earlier ruling would result in manifest injustice because the state courts were never provided an opportunity to resolve the issues presented now. *See Darr*, 339 U.S. at 204; *Vasquez*, 474 U.S. at 257 (noting that exhaustion "seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary" (citations omitted)); *see also O'Sullivan*, 526 U.S. at 845 (holding that "the rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance" (citation omitted)). Given that the prior ruling was clearly erroneous and would lead to manifest injustice, I recommend that it be rejected as the law of the case. *See generally Gordon*, 2010 WL 1790410, at *5.

Accordingly, I find that Applicant has failed to exhaust his claims. I note that Applicant's ability to pursue these claims in state court has now expired. *See* Colo. Rev. Stat. § 16-5-402 (2009) (imposing a three-year limitation on review); Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought. . . ."). Therefore, I find that Applicant is procedurally barred from exhausting his due process claims in state court or pursuing them in federal court unless the default is excused. *See Coleman*, 501 U.S. at 729-32, 750.

An applicant "may excuse a procedural default by demonstrating either 'cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995) (quoting *Brecheen v. Reynolds*, 41 F.3d 1343,

22

1353 (10th Cir. 1994)).  To show cause, an applicant must prove "that some objective factor external to the defense impeded [applicant's] effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (noting also that cause must first be shown before prejudice is considered).  Additionally, the fundamental miscarriage of justice test requires a showing that a "constitutional error . . . 'has probably resulted in the conviction of one who is actually innocent.'"  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496).

Given that Applicant was able to file two unsuccessful state court appeals with the assistance of counsel, one of which involved whether Applicant's trial and appellate counsel on direct appeal provided effective assistance, he has failed to demonstrate any external factor impeding his ability to comply with Colorado's procedural rules.  In addition, I note that Applicant has never claimed that his postconviction relief counsel was ineffective and that he, in fact, requested that she be appointed as counsel to represent him here  [Docket No. 21].  Further, to the extent that Applicant contends that his claims should be heard "in the interest of justice," *Traverse* [#22] at 2, I note that Applicant does not appear to assert his innocence.  As such, he has failed to demonstrate that dismissal would be a miscarriage of justice.  Accordingly, I find that Applicant's failure to exhaust his habeas claims and the procedural default that now results necessitates the denial of his Application. *See Coleman*, 501 U.S. at 750 (holding that procedurally defaulted claims are unexhausted and precluded from federal review where cause, prejudice and a miscarriage of justice are not present).

### III. Conclusion

In reviewing the Application, the Court finds that Applicant is not entitled to relief

pursuant to 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be **DISMISSED WITH PREJUDICE**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 28, 2010

                                        BY THE COURT:

                                         s/ Kristen L. Mix
                                        U.S. Magistrate Judge
                                        Kristen L. Mix